**Wayne Carver DWYER, Appellant,**

**v.**

**SABINE MINING COMPANY, North American Coal Corporation, and Phillip J. Walkovak, Appellees.**

No. 06–94–00025–CV.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 6, 1994.

Decided Nov. 15, 1994.

Rehearing Overruled Dec. 13, 1994.

analysis pursuant to Rule 403 before admitting the evidence.

Charles Clark, Jack Walker, Law Offices of Charles H. Clark, Tyler, for appellant.

Douglas R. McSwane, Jr., Deborah O. Evans, Potter, Minton, Davis, Roberts & Jones, P.C., Tyler, for appellees Sabine Min. Co. & North American Coal Corp.

Rex A. Nichols, Law Offices of Rex A. Nichols, Longview, for appellee Walkovak.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Wayne Dwyer appeals from a take-nothing summary judgment in his suit against Sabine Mining Company, its parent corporation, and Phillip Walkovak, a Sabine employee. Dwyer had sued Sabine and the others for damages due to defamation and tortious interference in his business relationship resulting from slanderous statements Walkovak made. Sabine and the others moved for summary judgment on grounds that limitations barred the suit, that Dwyer had settled his claims before suit, and that Walkovak was not in the scope of his employment with Sabine when he made the statements. The trial court granted summary judgment without revealing the bases for it. Because we find that limitations had not run on Dwyer's

cause of action for tortious interference and that fact issues were raised on the issues of settlement and scope of employment, we will reverse the judgment and remand the case for trial.

Dwyer was president of Mickey Dwyer, Inc., an independent nationwide representative for some mining equipment companies. He also was marketing vice-president for ABL Services, Inc. Dwyer had been negotiating for ABL with Boundary Equipment Company, a Canadian company, to secure ABL's appointment as Boundary's sales agent in Texas. At the same time, Dwyer was negotiating with Boundary for himself individually to act as sales representative in areas of the United States not served by ABL.

Dwyer attended a mining association meeting in Fort McMurray, Canada, on July 13, 1991. He attended the invitation-only meeting at Boundary's request. Phillip Walkovak, a maintenance supervisor at Sabine Mining Company's mine in Harrison County, Texas, also attended the meeting.

While at the meeting, Walkovak approached Dwyer and three Boundary officers, viz., Hal Hundeen, a salesman, Doug Poland, the president, and John McIntyre, the chief mechanical engineer. Apparently not realizing that Dwyer was an ABL representative, Walkovak made these statements about ABL: (1) it had "put the weenie to a lot of different people down there [in Texas]"; (2) "we [Sabine Mining Company] just can't do business with them"; (3) "they don't do any business with Texas Utilities"; (4) "they have been locked off mine locations at Texas Utilities and at Alcoa, as well as Sabine Mining"; (5) "these are not the kind of people you need representing your company down there"; and (6) "had I known that that guy [Dwyer] was with you, you wouldn't have come through the gate."

Dwyer says his contract negotiations with Boundary were nearly completed and that the final meeting was to take place on July 15, 1991, but after Walkovak's statements, the Boundary representatives refused to meet with him.

Dwyer filed his original petition alleging defamation on September 4, 1992, in the District Court of Smith County. On Walkovak's motion, the court transferred venue to Gregg County on January 4, 1993. Dwyer filed his first amended original petition on June 28, 1993, in which he again alleged defamation but also alleged that Walkovak's statements were designed to deprive him of prospective contracts and to undermine his business opportunities. He said the statements sabotaged the prospective contract he had with Boundary and deprived him of commissions.

■ As noted earlier, Sabine and the others moved for summary judgment on these grounds: limitations barred the suit, Dwyer had settled all claims, and Walkovak was not acting in the scope of his employment when he made the statements. When the court's summary judgment does not state the grounds on which it is rendered, we may uphold the judgment only if at least one of the grounds stated in the motion is correct. *Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

Dwyer first contends that summary judgment was improper based on the one-year statute of limitations.

■ A defamation suit must be brought not later than one year after the cause of action accrues. TEX.CIV.PRAC. & REM.CODE ANN. § 16.002 (Vernon 1986). The cause of action accrues when the matter is published or circulated, and the limitation statute begins to run when the injured person learns of the defamation. *Citizens State Bank of Dickinson v. Shapiro*, 575 S.W.2d 375, 380 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.); *Armstrong v. Morgan*, 545 S.W.2d 45, 47 (Tex.Civ.App.—Texarkana 1976, no writ). A suit for tortious interference with a business relationship or for business disparagement must be brought within two years. TEX.CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986). An injured party may sue for both personal defamation and business disparagement in the same suit so long as he avoids duplication of damages. If the shorter limitation period bars the defamation claim, it will not bar the disparagement claim so long as the plaintiff does not plead allegations

typical of an action for defamation. *Gulf Atlantic Life Ins. Co. v. Hurlbut,* 696 S.W.2d 83, 98 (Tex.App.—Dallas 1985), *rev'd on other grounds,* 749 S.W.2d 762 (Tex.1987). Slander is actionable without proof of special damages, so no specific economic loss need be proved in that cause of action. In a business disparagement suit, special damages are recoverable while damages to reputation or consequential mental distress are not recoverable. *Gulf Atlantic Life Ins. Co. v. Hurlbut,* 696 S.W.2d at 97. Thus, the kind of damages pleaded for is helpful in determining if the claims for slander and business disparagement are distinguishable.

■ Dwyer's cause of action accrued on July 13, 1991, when Walkovak uttered the statements. The statute began to run immediately because Dwyer learned of the statements when they were uttered. He filed his original petition, alleging defamation only, on September 4, 1992, after the one-year period had passed. He filed his first amended original petition, alleging business disparagement, on June 28, 1993, within the two-year limit.

Dwyer is seeking damages for injuries resulting from his loss of the contract with Boundary, his loss of business relationships, and his loss of commissions. Of course, Dwyer has not proven his damages because his case was disposed of by summary judgment, but he has pleaded the special damages caused by tortious interference and has furnished summary judgment evidence of the damages he is seeking. Although limitations has barred his claim for defamation, he has at least raised a fact issue on his claim for special damages because of business disparagement, and limitations has not barred that claim.

Dwyer also contends that summary judgment was not proper on the ground that he had compromised and settled his claims.

ABL had also sued Sabine, North American and Walkovak for defamation, but the parties settled that suit and executed a compromise and settlement agreement. Sabine argues that Dwyer took part in ABL's suit, knew of the settlement, and negotiated for his share of the settlement, and thus should be bound by it.

■ A release does not bind one who was not party to it. *Anderson Furniture Co. v. Roden,* 255 S.W.2d 345, 352 (Tex.Civ. App.—Amarillo 1952, writ ref'd n.r.e.). And a person is not bound by a release executed by a third party unless he authorized the third party to act for him. *City of Amarillo v. Hill,* 278 S.W.2d 332, 334 (Tex.Civ.App.— Amarillo 1954, no writ).

■ The release in question purports to release the claims of all employees, agents, and representatives. Dwyer argues that he was not an employee of ABL but rather an independent contractor representing ABL. Regardless of the relationship Dwyer may have had with ABL, in this suit he is pursuing his own remedies for his own injuries. Even if the release bars him from suing as an agent of ABL, he is free to sue for disparagement to his own business interests. Dwyer acknowledges that some of Walkovak's statements were not made about him personally but as a representative of ABL, but whether the statements led to his own separate injury for business disparagement is a fact question that should not be determined by summary judgment.

Sabine and North American did not present sufficient summary judgment evidence to prove as a matter of law that Dwyer was a party to the release or that they had the authority to settle for him. Thus, summary judgment on the ground of release was not justified.

Dwyer also attacks the propriety of summary judgment on the basis that Walkovak was not within the course and scope of his employment when he made the statements.

■ For an employer to be liable for its employee's tort under the doctrine of *respondeat superior,* the employee's act must have been within the scope of his general authority and must have been in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired. *Dieter v. Baker Service Tools,* 739 S.W.2d 405, 407 (Tex.App.—Corpus Christi 1987, writ denied); *Langley v. National Lead Co.,* 666 S.W.2d 343 (Tex.App.— El Paso 1984, no writ).

144

Walkovak, a mine maintenance supervisor for Sabine, attended the mining association meeting as a representative of his employer. He was there to exchange information with others in the industry on mining issues for the benefit of his employer. His employer paid for his trip and expenses. He made the statements while attending the meeting and while he wore a name tag with Sabine's name on it.

Sabine and North American did not produce summary judgment evidence proving as a matter of law that Walkovak was not acting within the scope and course of his employment. A genuine material fact issue remains. Thus, summary judgment on that ground was not proper.

For the reasons stated, the judgment is reversed and the cause is remanded for trial.